Arthur Wachtel, J.
These are nonpayment summary proceedings. The issues in both cases are the same. In both cases the landlord relies upon orders of the City Bent and Rehabilitation Administrator, increasing the rental, under section 33.1 of the Rent, Eviction and Rehabilitation Regulations, from the amount stipulated in the lease, by reason of certain major capital improvements, namely, “ adequate re-wiring of the building” and “installation of brass basement piping with new water main service, concealed brass risers and branches and trim in the bathroom ’ ’. The landlord further relies on an “ escalator clause” in the lease which provides: “31st. The Tenant further agrees to pay as additional rent such amount as may be fixed by order of the Temporary State Housing Rent Commis *853 sion for increased services or equipment, pursuant to section 33 (1) of the Bent and Eviction Begulations. That the tenant hereby consents that the electrical wiring system and electrical equipment be replaced, and that the plumbing fixtures and pipes may be replaced when deemed necessary by the Landlord, and the tenant agrees to pay as additional rent such amount as may be fixed by the Temporary State Housing Bent Commission for such improvement.”
In each case the tenant contends that the orders issued by the Bent Commission are specifically subject to existing leases, and at the bottom of each order appears the following: “ Notice to Landlord and Tenant: Any written lease still in effect which provides for the payment of a rent less than the maximum rent fixed by this order governs the rent for the above described housing accommodation until its expiration ”.
The landlord cites the decision of the Appellate Term, First Department, in Miller v. Haviland (N. Y. L. J., Feb. 2, 1962, p. 13, col. 4). In this case also the orders of the Local Bent Administrator increased the rent of the tenant under subdivision 1 of section 33 of the State Bent and Eviction Begulations, by reason of major capital improvements, and the lease contained an escalator clause in respect of “ such amounts as may be fixed by order of the Temporary State Housing Bent Commission, for increased services or equipment ’ ’. However, subsequent to the Miller v. Haviland, in May, 1962, the Appellate Division, First Department, in Esposito v. Brien (16 A D 2d 751) involving re-wiring, where the escalator clause was the same as in the Miller case, reversed the Appellate Term’s decision in favor of the landlord, and directed a final order for the tenant.
The Appellate Division in its opinion stated: “ The Bent Administrator never approved a rent increase for increased services or equipment with respect to an apartment subject to an unexpired valid lease. Consequently, the provision of the lease providing for escalation did not become operative. An unconditional increase authorized by the Bent Administrator might have invoked the operation of the clause.”
This decision of the Appellate Division must be deemed to have reversed the decision of the Appellate Term in Miller v. Haviland.
It is true that in the case at bar there is an additional provision in the escalator clause (absent in the Eaviland and Esposito cases) as follows: “ tenant hereby consents that the electrical wiring system and electrical equipment may be replaced and that the plumbing fixtures and pipes may be replaced when deemed necessary by the Landlord, and the *854 tenant agrees to pay as additional rent, such amount as may he fixed by the Temporary State Housing Rent Commission for such improvement ’ \
However* this additional clause does not change the result.
These cases are controlled by section 33.2 of the Rent, Eviction and Rehabilitation Regulations, applicable to voluntary written agreements. Paragraph (3) of subdivision a provides that rent increases may be stipulated in the following cases: (a) Where the order of the Administrator provides for increase pursuant to subdivision a of section 33.1 of the regulations (that is, in respect to services, furniture, furnishings or equipment, specifically consented to or accepted by the tenant) or (b) Where the order provides for increase, pursuant to subdivision b of section 33.1 (that is, in case of substantial rehabilitation of the building or housing accommodations which materially adds to the value of the property or appreciably prolongs its life) or pursuant to subdivision c of section 33.1 (that is, in case of a major capital improvement required for the operation, preservation or maintenance of the structure) and Where in either case, such major capital improvement or substantial rehabilitation was either completed or in progress when the lease was executed.
These regulations adopted by the City Rent and Rehabilitation Administrator in effect May 1, 1962 and revised September 1, 1962 are in effect a recodification of the State Rent and Eviction Regulations as interpreted by the State Rent Administrator, in his Opinion No. 76A (Revised). In that opinion, the Administrator pointed out the distinction as to new services or facilities provided at or prior to the execution of the lease (such as a new stove, refrigerator, etc.). The tenant may sign a consent to pay the rent increase for such new services or facilities, under subdivision a of section 33.1 and his consent would be binding. Similarly, where a major capital improvement either completed or in progress when the lease was executed, the tenant may specifically consent to a rent increase ordered by the Rent Administrator and such consent would be binding.
This is entirely different from a general blanket escalator clause in the lease to pay future permissible increases in the maximum rent with respect to future major capital improvements not already completed or in progress at the time of the lease. Such blanket escalator clauses in the lease would in effect nullify the declared purpose of the Legislature and, since May 1, 1962, of the City Council, to give the tenant protection against indiscriminate increases for a period of two years, except for the declared 15% increase, where the tenant volun *855 tarily entered into a lease. (See State Rent Administrator’s Opinion No. 73.)
The clear intent of the Legislature in providing for voluntary agreements was ‘ ‘ to permit a tenant to trade two years of security in the possession of his dwelling, at a fixed rental in return for a 15% increase or give him the alternative of staying on in the less secure status of a statutory tenant at the old rental ” (Matter of Zipkin v. Weaver, 9 A D 2d 137, 139-140, Valente, J.). That salutary purpose would be thwarted if the landlord could legitimately demand more of the tenant than what the regulations specifically permit (Matter of Zipkin v. Weaver, supra).
In the absence of any evidence that the major capital improvements in these cases were either completed or in progress when the leases were executed, the orders of increase would not apply to existing leases, as specifically noted in the orders themselves.
Accordingly, in the Colon case (L. & T. Bronx, First Dist. 12522/1962) the maximum rent is the lease rent, namely $86 per month, and the court directs final order in favor of the landlord in the said amount for the month of August, the month specified in the petition. Five days’ stay.
In the Gonzales case (L. & T. Bronx, First Dist. 11833/1962) the maximum rent is the lease rent, namely $77,61 and the court directs final order for the landlord in that amount for the month of July, the month specified in the petition. Five days’ stay.